IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ALPINE ADVANCE 5 LLC § | |
| § | |
| Plaintiff, § | Civil Action No.: |
| vs. § | |
| § | |
| STRIPE, INC. and TURO INC. § | |
| § | |
| Defendants. § | |

## ORIGINAL COMPLAINT

Plaintiff Alpine Advance 5 LLC, a New York limited liability company ("Alpine" or "Plaintiff") alleges the following for its Original Complaint against Defendant Stripe, Inc., a Delaware corporation ("Stripe") and Defendant Turo Inc., a Delaware corporation ("Turo") (collectively, "Defendants"), as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a New York limited liability company with its headquarters in New York, New York County, NY. Plaintiff is in the business of factoring. Plaintiff has three (3) members, who are all individuals: (i) Fey Marcovich, domiciled in the State of New Jersey (ii) Asher L. Bernstein, domiciled in the State of Illinois; and (iii) Joshua Greenblatt, domiciled in the State of New York.

2. Plaintiff is informed and believes, and based thereon alleges, that Stripe is, and at all relevant times hereto was, a corporation organized under the laws of the state of Delaware with its principal place of business in San Francisco, California, and is a citizen of the states of Delaware and Texas. Plaintiff is further informed and believes, and based thereon alleges, that Stripe does business in, and is registered to do business in Texas.

3. Plaintiff is informed and believes, and based thereon alleges, that Turo is, and at all

1

relevant times hereto was, a corporation organized under the laws of the state of Delaware with its principal place of business in San Francisco, California, and is a citizen of the states of Delaware and California. Plaintiff is further informed and believes, and based thereon alleges, that Turo does business in, and is registered to do business in, Texas.

4. This Court has subject matter jurisdiction over this matter under its diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because: (a) the amount in controversy exceeds $75,000.00 exclusive of interest and costs; and (b) Plaintiff and Defendants are citizens of different states. *See* 28 U.S.C. § 1332(a).

5. This Court has general personal jurisdiction over Stripe, because Stripe maintains and/or has maintained substantial, continuous, and systematic contacts with this state and has purposefully availed itself of the benefits of doing business in this state. Stripe maintains minimum contacts with this state sufficient to subject it to service of process and sufficient to comply with due process of law in this action. Stripe is a for-profit corporation registered with the Texas Secretary of State to do business in the State of Texas, and Stripe has appointed a Texas agent for service of process: C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

6. This Court has general personal jurisdiction over Turo, because Turo maintains and/or has maintained substantial, continuous, and systematic contacts with this state and has purposefully availed itself of the benefits of doing business in this state. Turo maintains minimum contacts with this state sufficient to subject it to service of process and sufficient to comply with due process of law in this action. Turo is a foreign for-profit corporation registered with the Texas Secretary of State to do business in the State of Texas, and Turo has appointed a Texas agent for service of process: C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-

3136.

7.	This Court also has specific personal jurisdiction over Stripe because Plaintiff's claims are related to Stripe's activities and contacts within the State of Texas.  Specifically, Stripe is a payment processing platform doing business with customers in Texas.

8.	This Court also has specific personal jurisdiction over Turo because Plaintiff's claims are related to Turo's activities and contacts within the State of Texas.  Specifically, Turo is an online platform that rents vehicles to Texas customers on behalf of National Vehicle Rentals LLC, a non-party merchant relevant to this case, which does business in Texas.

9.	Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.  Further, a non-party merchant relevant to the events or omissions giving rise to this claim, National Vehicle Rentals LLC ("National"), has its principal place of business in Tarrant County, Texas.  Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(b)(3), because Defendant is subject to the Court's personal jurisdiction with respect to this action.

## BACKGROUND ON FACTORING[1]

10.	Plaintiff is a financial services company which, among other things, provides financing facilities to its customers including, but not limited to, factoring facilities which involves

---

[1] This action, which involves secured transactions, is governed by the Uniform Commercial Code, as adopted in the State of Texas as its Uniform Commercial Code ("UCC") under Title 1 Uniform Commercial Code. Under the UCC, the law governing perfection and priority of a security interest in collateral is governed by the local law of the jurisdiction where the debtor and/or the collateral is located.  *See* TEX. BUS. & COM. CODE ANN. § 9.301(1) and (2).

the purchase of "Accounts[2]" from businesses.[3] In factoring, the entity that purchases the Accounts is known as the "Factor." The entity from which the Factor purchases the Accounts is the "Factoring Client." The Factoring Client's customer, who owes payment on the Account is an "Account Debtor.[4]"

11. As a Factor, Plaintiff advances funds to its Factoring Clients by purchasing the Factoring Client's Accounts and advancing a percentage of the account value. Plaintiff also takes a security interest in the Factoring Client's assets (including but not limited to all of its Accounts) to secure repayment of the Factoring Client's obligations. In collecting on its purchased and assigned Accounts and to evidence its ownership and security interest in same, Plaintiff or the Factoring Client provides notice to all of the Factoring Client's Customers (i.e., its Account Debtors). The notice tells the Account Debtors that the Factoring Client's Accounts have been assigned to Plaintiff for payment and that obligations owed to the Factoring Client are to be paid directly to Plaintiff (including amounts owed on Accounts which the Factor has not purchased). With respect to the Accounts that the Factor has purchased, once purchased, the Factoring Client does not retain any legal or equitable interest in the Accounts sold. *See* TEX. BUS. & COM. CODE ANN. § 9.318(a) ("[a] debtor that has sold an account … does not retain a legal or equitable interest

---

[2] Texas Business and Commerce Code § 9.102(a)(2), in relevant part, defines "[a]ccount" as "... a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, [or] (ii) for services rendered or to be rendered […]."

[3] **Applicable Law.** In this diversity jurisdiction action, the Court is bound to apply state substantive law and federal procedural law. *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). In determining the applicable state substantive law, "[a] federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state when a conflict of law arises." *Burdett v. Remington Arms Co., L.L.C.*, 854 F.3d 733, 735 (5th Cir. 2017). Here, Article 9 of the Uniform Commercial Code supplies the choice of law principles, because Article 9 governs both the sale of accounts from National to Plaintiff and Plaintiff's corresponding security interest in National's accounts. TEX. BUS. & COM. CODE ANN. § 9.109(a)(1)-(3). Under section 9-301 of the Uniform Commercial Code, the law of the State of Texas (where National is located) governs the perfection and priority of Plaintiff's security interest in the accounts generated by National. TEX. BUS. & COM. CODE ANN. § 9.301(1).

[4] An "Account Debtor" is "a person obligated on an account […].." TEX. BUS. & COM. CODE ANN. § 9.102(a)(3).

in the collateral sold."). Thus, all legal and equitable interests in the sold Accounts, including the exclusive right to receive payment from the Account Debtor, vest with Plaintiff.

## THE SUBJECT AGREEMENTS

12. On or about June 12, 2023, and June 23, 2023, Plaintiff entered into two Standard Merchant Cash Advance Agreements ("Factoring Agreements") with non-party National Vehicle Rentals LLC ("National"), a Texas limited liability company, whereby, among other things, Plaintiff agreed to purchase accounts from National under an agreed-upon formula based on National's accounts receivable. A true and correct copy of the Factoring Agreements, as redacted, but together with all addendums thereto, is attached hereto as **Exhibit A** and is fully incorporated herein by this reference.

13. Pursuant to the Factoring Agreements, Plaintiff purchased Accounts from and provided advances to National for the purchase price of $310,000.00. Furthermore, under the Factoring Agreements, National granted Plaintiff a security interest in collateral, "defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC." (the "Collateral").[5] Plaintiff perfected its security interest in the Collateral by, among other things, filing with the Texas Secretary of State a UCC-1 Financing Statement on July 9, 2023, bearing file number 002300029762596 (the "UCC-1.") A true and correct copy of the filed UCC-1 is attached hereto as **Exhibit B** and is fully incorporated herein by this reference.

14. Plaintiff is informed and believes, and based thereon alleges, that National is a

---

[5] *See* Exhibit A at § 29.

vehicle rental service that provides Tesla vehicles to customers for rent. Turo provides an online vehicle sharing platform that connects vehicle owners, like National, with travelers and locals seeking to rent those vehicles. National supplied or shared its Tesla vehicles for rent on Turo's online platform, to customers in Texas, pursuant to its agreement with Turo ("Host Agreement"). Under the Host Agreement, Turo requires vehicle owners or hosts to have payments made by customers to be processed by Stripe, in certain countries, under Stripe's servicing agreement ("Stripe Agreement"), which is incorporated into the Host Agreement. Customers who rented National's Tesla vehicles on the Turo platform had payments processed by Stripe.

15. Plaintiff is further informed and believes, and based thereon alleges, that at all relevant times hereto, Stripe was a customer and Account Debtor of National and that National paid money to Stripe in exchange for Stripe to process payments from National's vehicle-rental customers, pursuant to a written agreement entered into between National and Stripe, the precise terms of which are within Stripe's knowledge and/or at Stripe's specific request for payment for its services.

16. In addition, or alternatively, Plaintiff is further informed and believes, and based thereon alleges, that at all relevant times hereto, Turo was a customer and Account Debtor of National and that National paid money to Turo in exchange for listings on Turo's online platform for National's customers to pay through Stripe's payment processes.

17. In addition, or alternatively, Plaintiff is further informed and believes, and based thereon alleges that Turo controlled and/or managed National's account with Stripe, as Stripe was the payment agent for Turo.

## THE NOTICE OF ASSIGNMENT

18. On August 7, 2023, Plaintiff sent a written notice of assignment to Turo, advising

Turo that all of National's Accounts had been assigned to Plaintiff and instructing Turo to make all payments on Accounts, generated by National, directly to Plaintiff (the "Notice of Assignment"). The Notice of Assignment advised Turo about the financial relationship between Plaintiff and National, specifically notifying Turo that the arrangement included that Plaintiff "was to receive a percentage of all of the Merchant's receipts, and Alpine was authorized to file a UCC-1 financing statement to perfect its security interest in the Merchant's receipts, which Alpine did on July 9, 2023." Further, the Notice of Assignment stated that "Under the Agreement, in the event of the Merchant's [National] default, Alpine was irrevocably appointed as the Merchant's agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Alpine from the Merchant under the Agreement, including collecting money due to the Merchant. Alpine held the Merchant in default of the Agreement as of July 26, 2023, and the Merchant currently owes Alpine $345,053.75 under the Agreement." The Notice of Assignment directed Turo to "direct all funds that would otherwise be due to the Merchant to [Plaintiff's counsel] until the sum of $345,053.75 is received." The Notice of Assignment provided payment instructions and a deadline to pay within seven (7) days after the date of the Notice of Assignment. A true and correct copy of the Notice of Assignment is attached hereto as **Exhibit C** and is fully incorporated herein by this reference.

19. On August 7, 2023, Turo emailed Plaintiff, acknowledging receipt of the Notice of Assignment, and stating that it would place an immediate hold on payments due to National's Account, or the amount of $302,053.35, on hold. Turo further stated that it would forward the Notice of Assignment to Stripe and that Stripe would hold any current or future payments in escrow. Turo further instructed Plaintiff to forward its Notice of Assignment to Stripe and request to release funds of National. Turo provided an email contact of Stripe's legal department to Plaintiff. A true

and correct copy of this email is attached hereto as **Exhibit D**, and is fully incorporated herein by reference.

20.     On or about August 18, 2023, Plaintiff emailed the Notice of Assignment to Stripe, to the email contact provided by Turo. Plaintiff, thereafter, sent multiple emails to Stripe seeking a response. A true and correct copy of the Notice of Assignment to Stripe is attached hereto as **Exhibit E**, and is fully incorporated herein by reference.

21.     On September 28, 2023, Stripe finally replied to Plaintiff by email, with its Notice of Assignment, stating, "Thank you for your notice. Unfortunately, we were unable to locate a merchant matching the information provided."

22.     On September 29, 2023, Turo emailed Plaintiff, acknowledging that Stripe received the Notice of Assignment, but stating that "the EIN in the Lien notice does not match a Turo account" and that "no holds for funds have been placed."

## THE SUBJECT ACCOUNTS AND DEFENDANTS' DEFAULT

23.     After the receipt of the Notice of Assignment, Defendants, for a time, complied with the directive in the Notice of Assignment, by placing a hold on the accounts of National with Turo and/or Stripe ("Subject Accounts"), which held approximately $302,053.35.

24.     However, despite identifying and placing a hold on the Subject Accounts, Defendants improperly released funds held in the Subject Accounts, which belong to Plaintiff, to National.

25.     In addition to the amount held in the Subject Accounts of approximately $302,053.35, Plaintiff is informed and believes, and based thereon alleges, that additional amounts were paid into the Subject Accounts, by customers of National, which constitute Plaintiff's secured collateral and were assigned to Plaintiff for payment. Plaintiff does not know the full extent of

8

amounts paid over notice.

## PLAINTIFF'S AUTHORITY TO COLLECT THE SUBJECT ACCOUNTS

26. Division 9 (Secured Transactions) of the UCC governs Plaintiff's authority to collect on the Subject Accounts, including all amounts owed to National from Defendants. As assignee of the Subject Accounts and holder of a duly perfected security interest therein, Plaintiff has the authority under the UCC to enforce its Notice of Assignment and obtain full payment on the Subject Accounts from Defendants.

27. Pursuant to the Factoring Agreements, Plaintiff advanced funding to National to purchase its receivables, and Plaintiff was granted a security interest in, and took assignment of, all of National's Accounts, including the Subject Accounts. The Factoring Agreements also authorized Plaintiff to collect the Accounts of National from National's Account Debtors such as the Defendants. In addition, National was in default of its obligations under the Factoring Agreements. Pursuant to 9-201, the terms of the Factoring Agreements were effective as between National and Plaintiff, and against all creditors of National. TEX. BUS. & COM. CODE ANN. § 9.201(a) ("a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors"). And, under Texas Business and Commerce Code § 9.607(a), pursuant to the agreement of National under the Factoring Agreements, Plaintiff has authority, among other things, to both:

> "(1) … notify an account debtor or other person obligated on collateral to make payment … to … the secured party;" and
>
> "(3) … enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment … to the debtor …."

28. As a result, pursuant to the terms of the Factoring Agreements and TEX. BUS. &

COM. CODE § 9.607, Plaintiff can exercise its right to its collateral by, among other things, enforcing Defendants' obligations to pay National and other charges due under the Subject Accounts.

29. Further, pursuant to Section 9.406(a), once Defendants received Notice of Assignment of the Subject Accounts to Plaintiff, Defendants could discharge its obligations to pay the Subject Accounts only by paying those Accounts directly to Plaintiff. TEX. BUS. & COM. CODE ANN. § 9.406(a). As Section 9.406(a) states:

> An account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

29. Despite Plaintiff's multiple demands for payment, Defendants have failed to pay their total outstanding obligations.

30. With this action, Plaintiff seeks to recover the amounts still due and owing from Defendants on the Subject Accounts.

**FIRST CAUSE OF ACTION**

**(Breach of Contract pursuant to Common Law and TEX. BUS. & COM. CODE §§ 1.106, 9.201, 9.318, 9.406, 9.607, as to Stripe)**

31. Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 to 30, inclusive, of this Complaint as though fully set forth herein.

32. As set forth *supra*, Defendant Stripe processed payments of vehicle rental customers of National, on the Turo platform, in exchange for a portion of each payment processed, pursuant to a written agreement. Pursuant to the agreement, Stripe was obligated to maintain an account for National which held these payments.

33. Plaintiff was the owner of, and the assignee of, the rights to payment on all Subject Accounts arising from payments processed by Defendant Stripe for customers of National. Plaintiff also held a duly perfected security interest in the Subject Accounts. After selling and assigning the Subject Accounts to Plaintiff, National retained no further interest in the Subject Accounts, pursuant to Section 9.318. *See* TEX. BUS. & COM. CODE § 9.318. Pursuant to Sections 9.318, 9.406 and 9.607, Plaintiff, alone, was entitled to receipt of payments from Defendant Stripe on the Subject Accounts. *See* TEX. BUS. & COM. CODE §§ 9.318, 9.406 and 9.607.

34. Despite Plaintiff's demand for and entitlement to receive payment, Defendant Stripe has refused to make payment to Plaintiff for the payments Stripe received on the Subject Accounts.

35. As a result, Defendant Stripe is indebted to Plaintiff, in the amount of, at least, $302,053.35, exclusive of interest and costs that continue to accrue, for which Defendant Stripe has yet to pay Plaintiff.

**SECOND CAUSE OF ACTION**

**(Breach of Contract pursuant to Common Law and TEX. BUS. & COM. CODE §§ 1-106, 9.201, 9.318, 9.406, 9.607, as to Turo)**

36. Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 to 35, inclusive, of this Complaint as though fully set forth herein.

37. As set forth *supra*, National shared its Tesla vehicles on Turo's platform, pursuant to a written agreement between National and Turo. Customers that rented National's vehicles made payments that were processed by Stripe and held in an account that was controlled and/or managed by Turo.

38. Plaintiff was the owner of and the assignee of the rights to payment on all Subject Accounts arising from payments processed by Defendant Stripe for customers of National.

Plaintiff also held a duly perfected security interest in the Subject Accounts. After selling and assigning the Subject Accounts to Plaintiff, National retained no further interest in the Subject Accounts, pursuant to Section 9.318. *See* TEX. BUS. & COM. CODE § 9.318. Pursuant to Sections 1.106, 9.201, 9.318, 9.406 and 9.607, Plaintiff, alone, was entitled to receipt of payments from Defendant Turo on the Subject Accounts. *See* TEX. BUS. & COM. CODE §§ 1.106, 9.201, 9.318, 9.406 and 9.607.

39. Despite Plaintiff's demand for and entitlement to receive payment, Defendant Turo has refused to make payment to Plaintiff for payments that Stripe received on the Subject Accounts.

40. As a result, Defendant Turo is indebted to Plaintiff, in the amount of, at least, $302,053.35, exclusive of interest and costs that continue to accrue, for which Defendant Turo has yet to pay Plaintiff.

## THIRD CAUSE OF ACTION

**(Breach of Statutory Duty to Pay Pursuant to TEX. BUS. & COM. CODE §§ 1.106, 9.201, 9.318, 9.406, and 9.607)**

41. Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 to 40, inclusive, of this Complaint as though fully set forth herein.

42. On or about August 2, 2023, Plaintiff sent Defendants the Notice of Assignment, whereby Plaintiff advised Defendants about the financing relationship between Plaintiff and National with the Factoring Agreements, and this agreement included the sale of National's receivables to Plaintiff, along with a UCC lien on same. Furthermore, the Notice of Assignment directed Defendants to pay any funds or receivables held by Defendants to Plaintiff until the debt of $345,053.75 was paid.

43. Despite its receipt of the Notice of Assignment and Plaintiff's demand for payment

for amounts owed on the Subject Accounts up to $345,053.75, Defendants have refused to pay Plaintiff on the outstanding obligations.

44. Furthermore, despite its receipt of the Notice of Assignment, Defendants disregarded the payment instructions and made payments directly to National and/or a person or entity, other than Plaintiff, in an amount to be determined at trial, which payments were contrary to the directive in the Notice of Assignment.

45. Pursuant to Sections 1.106, 9.201, 9.318, 9.406, and 9.607, Plaintiff, alone, was entitled to receipt of payments from Defendants on the Subject Accounts and is entitled to enforce Defendants' obligations thereunder. *See* TEX. BUS. & COM. CODE §§ 1.106, 9.201, 9.318, 9.406 and 9.607.

46. Accordingly, there is now due, owing, and unpaid from Defendants to Plaintiff the sum of *at least* $302,053.35, plus accruing costs, and applicable pre-judgment interest.

## FOURTH CAUSE OF ACTION

**(Declaratory Relief against Defendants)**

47. Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 to 46, inclusive, of this Complaint as though fully set forth herein.

48. Plaintiff is informed and believes, and based thereon alleges that an actual and justifiable controversy has arisen and now exists between the parties in which Plaintiff contends and Defendants deny: (i) that Plaintiff holds a valid, security interest in all of National's assets including its accounts and general intangibles, among other assets, as defined in the Factoring Agreements (the "Collateral"); (ii) that Defendants are obligated to make payment to Plaintiff on the Subject Accounts pursuant to its obligations under its agreement with National, the Notice of Assignment, and its obligations under the UCC; and (iii) that Defendants are obligated to make

payment to Plaintiff on the amounts paid over notice to anyone other than Plaintiff.

49. Plaintiff is informed and believes, and based thereon alleges, that a judicial determination is necessary and appropriate so that the parties may ascertain their respective rights and obligations with respect to the Subject Accounts and pursuant to the UCC in regards to the alleged amounts of the outstanding debt.

50. As a result of the foregoing, Plaintiff is entitled to declaratory judgment to the effect that, Plaintiff is entitled to an award against Defendants for the total amounts owed under the Subject Accounts and the amounts paid over notice.

## FIFTH CAUSE OF ACTION

**(Accounting against Defendants)**

51. Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 to 50, inclusive, of this Complaint as though fully set forth herein.

52. Plaintiff holds a valid security interest in all of National's assets, including its accounts and general intangibles, among other assets, as defined in the Factoring Agreements as the Collateral. Thus, Defendants are obligated to make payment to Plaintiff on all accounts of National, pursuant to its obligations under its agreement with National, the Notice of Assignment, and its obligations under the UCC. Based upon Defendants' wrongful acts and conduct, Plaintiff is entitled to an accounting of all amounts owed by Defendants to National.

53. Furthermore, as Defendants' payment obligations to Plaintiff are not discharged when Defendants make payment on amounts owed on National's Accounts to anyone other than Plaintiff, Plaintiff is entitled to an account of the amounts paid over notice by Defendants to anyone other than Plaintiff.

54. Plaintiff further requests that this Court enter orders against Defendants for

damages as found by the accounting.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in favor of Plaintiff and against Defendants as follows:

**As to First, Second and Third Causes of Action**

1. For actual damages in an amount subject to proof, of at least $302,053.35;

**As to Fourth Cause of Action**

2. For a declaration that Plaintiff is entitled to an award against Defendants for the total amount owed under the Subject Accounts;

3. For a declaration that Plaintiff is entitled to an award against Defendants for the total amounts paid over notice;

**As to Fifth Cause of Action**

4. For an order requiring that Defendants account fully for all amounts owed on the Subject Accounts, whether or not purchased/factored by Plaintiff;

5. For an order requiring that Defendant account fully for all amounts paid over notice on National Accounts to anyone other than Plaintiff;

6. For damages as found by the accounting;

**As to All Causes of Action**

7. For prejudgment interest at the legal rate; and

8. For such other and further relief as the Court may deem just and proper.

DATED: November 15, 2024

Respectfully submitted,

**LAW FIRM OF SHAWN M. GRADY, PLLC**

By: */s/ Shawn M. Grady*
　　　Shawn M. Grady, Attorney-in-Charge
　　　Texas State Bar No. 24076411
　　　shawn@gradycollectionlaw.com

2100 West Loop South, Suite 805
Houston, Texas 77027
832-692-4542 Telephone
903-416-8218 Facsimile

**ATTORNEY FOR PLAINTIFF**